**15-3525-cv**
*Spak v. Phillips*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2016

ARGUED: SEPTEMBER 27, 2016
DECIDED: MAY 22, 2017

No. 15-3525-cv

PAUL SPAK,
*Plaintiff-Appellant,*

*v.*

SHANE PHILLIPS,
*Defendant-Appellee.*

————

Appeal from the United States District Court
for the District of Connecticut.
No. 13 Civ. 1724 – Jeffrey A. Meyer, *Judge.*

————

Before: WALKER and CABRANES, *Circuit Judges*, and BERMAN, *District Judge.* *

————

---

*Judge Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

Plaintiff-appellant Paul Spak appeals a decision of the United States District Court for the District of Connecticut (Jeffrey A. Meyer, J.) granting summary judgment in favor of the defendant-appellee Shane Phillips, an officer with the Plainville Police Department in Plainville, Connecticut. In 2010, Spak was arrested by Phillips and charged under Conn. Gen. Stat. § 53a-155 with destroying evidence related to the alleged discharge of illegal fireworks. The prosecuting attorney subsequently dismissed those charges by entering a *nolle prosequi*. More than three years after the entry of the *nolle*, Spak brought suit against Phillips for malicious prosecution in violation of the Fourth Amendment, under 42 U.S.C. § 1983. The district court held that Spak's malicious prosecution claim accrued when the *nolle prosequi* was entered, and that as a result his suit was time-barred. On appeal, Spak contends that his claim did not accrue when the prosecuting attorney *nolled* his case, but thirteen months later when all public records of his prosecution were erased pursuant to a Connecticut recordkeeping statute. We conclude that Spak's claim accrued when the charges against him were *nolled*. We therefore AFFIRM the judgment of the district court.

————

JOHN R. WILLIAMS, John R. Williams and Associates, LLC, New Haven, CT, *for Plaintiff-Appellant*.

JAMES N. TALLBERG (Dennis M. Durao, *on the brief*), Karsten & Tallberg, LLC, Rocky Hill, CT, *for Defendant-Appellee.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff-appellant Paul Spak appeals a decision of the United States District Court for the District of Connecticut (Jeffrey A. Meyer, J.) granting summary judgment in favor of the defendant-appellee Shane Phillips, an officer with the Plainville Police Department in Plainville, Connecticut. In 2010, Spak was arrested by Phillips and charged under Conn. Gen. Stat. § 53a-155 with destroying evidence related to the alleged discharge of illegal fireworks. The prosecuting attorney subsequently dismissed those charges by entering a *nolle prosequi*. More than three years after the entry of the *nolle*, Spak brought suit against Phillips for malicious prosecution in violation of the Fourth Amendment, under 42 U.S.C. § 1983. The district court held that Spak's malicious prosecution claim accrued when the *nolle prosequi* was entered, and that as a result his suit was time-barred. On appeal, Spak contends that his claim did not accrue when the prosecuting attorney *nolled* his case, but thirteen months later when all public records of his prosecution were erased pursuant to a Connecticut recordkeeping statute. We conclude that Spak's claim

accrued when the charges against him were *nolled*. We therefore AFFIRM the judgment of the district court.

**BACKGROUND**

The relevant facts in this appeal are not in dispute. On June 12, 2010, Phillips responded to a complaint of fireworks being discharged in Spak's neighborhood. When he arrived to investigate, he observed Spak burning the remnants of fireworks in a backyard fire pit, in what Phillips perceived as an attempt to destroy evidence. The following day, Phillips submitted a sworn affidavit to the Connecticut Superior Court seeking a warrant to arrest Spak on, *inter alia*, charges of tampering with or fabricating evidence. Based on Phillips' sworn statement, the Connecticut Superior Court issued a warrant for Spak's arrest on June 15, 2010, and based on that warrant Spak was arrested on June 24, 2010. On September 10, 2010, the prosecuting attorney unilaterally dismissed the charges against Spak by entering a *nolle prosequi*. A *nolle prosequi* is "a declaration of the prosecuting officer that he will not prosecute further at that time . . . Upon the entering of a nolle prosequi by the state's attorney, there is no case." *State v. Winer*, 286 Conn. 666, 685 (quoting *State v. Ackerman*, 27 Conn. Supp. 209, 211 (1967)). The state never instituted further charges against Spak subsequent to the *nolle* stemming from the June 12, 2010 incident.

On October 29, 2013, Spak sued Phillips in Connecticut state court for malicious prosecution under Section 1983 and the Fourth Amendment. Phillips removed the action to the District of Connecticut on November 18, 2013. On January 30, 2015, Phillips moved for summary judgment on several grounds, including that Spak's action was untimely because he filed his complaint more than three years after the accrual of his claim. On October 14, 2015, the district court granted Phillips' motion for summary judgment on that ground. Specifically, the district court held that Spak's malicious prosecution claim accrued on September 10, 2010, when the charges against him were *nolled*, and therefore dismissed the suit as time-barred. Spak now appeals.

## DISCUSSION

A district court's grant of summary judgment is reviewed *de novo*. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). All legal conclusions by a district court are reviewed *de novo*. *United States v. Livecchi*, 711 F.3d 345, 351 (2d Cir. 2013) (per curiam).

On appeal, it is uncontested that Spak filed his complaint alleging malicious prosecution more than three years after the state's attorney's entry of a *nolle prosequi*. Spak concedes that if his claim for malicious prosecution accrued on the date that the state's attorney *nolled* the charges against him, his suit is untimely. However, he

argues that his claim did not accrue on the date that the charges against him were *nolled*, but thirteen months later when Connecticut law mandated that the records of his *nolled* prosecution be erased.

## I.      Accrual of Section 1983 Claims

In the absence of federal common law, the merits of a claim for malicious prosecution under Section 1983 are governed by state law. *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989).[1] Likewise, the applicable statute of limitations for a malicious prosecution claim is borrowed from the statute of limitations for the analogous claim under the law of the state where the cause of action accrued, *see*

---

[1] Under Connecticut law, a plaintiff asserting malicious prosecution must prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Brooks v. Sweeney*, 299 Conn. 196, 210-11 (2010). The United States Supreme Court has never squarely held that a plaintiff may bring a suit under Section 1983 for malicious prosecution based on an alleged violation of his Fourth Amendment rights. In *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), the Supreme Court confirmed that plaintiffs can sustain Section 1983 suits under the Fourth Amendment for deprivations of liberty suffered as a result of improper or maliciously instituted legal process. *Id*. at 918 ("[T]hose objecting to a pretrial deprivation of liberty may invoke the Fourth Amendment when . . . that deprivation occurs after legal process commences."). However, the Court's opinion in *Manuel* did not directly address the other "elements of, and rules associated with, an action seeking damages for" an unlawful pretrial detention. *Id*. at 920. The rule in the Second Circuit is that plaintiffs may bring what is in effect a state law suit for malicious prosecution in federal court under Section 1983, so long as they are able to demonstrate a deprivation of liberty amounting to a seizure under the Fourth Amendment. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). Under our precedent, such a suit is proper where: (1) the defendant is a state actor, and (2) the plaintiff who was subject to malicious prosecution was also subject to arrest or seizure within the meaning of the Fourth Amendment. *See Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).

*Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007), which in Connecticut is three years, *see Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005).

However, the time at which a claim for malicious prosecution under Section 1983 accrues is "a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388. Federal courts apply "general . . . common-law tort principles" to determine the accrual date of a Section 1983 claim. *Id.; see also Manuel*, 137 S. Ct. at 920 ("In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts."). In malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution "terminate[s] in the plaintiff's favor." *Poventud v. City of N.Y.*, 750 F.3d 121, 130 (2d Cir. 2014) (en banc) (quoting *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994)). A "favorable termination" does not occur until the prosecution against the plaintiff has "conclusively" ended. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).

One point of clarification regarding this accrual rule is in order. The fact that the accrual of Section 1983 claims is analyzed under federal common law, while the merits of those claims are analyzed under the law of the state where the tort occurred, has led to some confusion concerning the standards used to define a "favorable termination" in the malicious prosecution context. This is

because a malicious prosecution claim accrues when the underlying prosecution terminates in favor of the accused, *id.*, but "favorable termination" is also a substantive element of a state law tort claim, *see, e.g.*, *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980). While the same phrase—"favorable termination"—is used in both the accrual analysis and the merits analysis of a Section 1983 suit, it is analyzed under a different legal standard in each context.

When the question before a federal court is at what point a malicious prosecution claim accrued, "favorable termination" is analyzed under federal common law, because the timing of accrual is a question of federal law. *See, e.g.*, *Wallace*, 549 U.S. at 388. When, by contrast, a federal court is analyzing the substantive merits of a plaintiff's claim, the definition of "favorable termination" is analyzed under state law. *See, e.g.*, *Singleton*, 632 F.2d at 193. What constitutes a "favorable termination" may turn out to be the same in each context, but not necessarily so. However, even if "favorable termination" in a particular case is unclear as a matter of state law, it can still be conclusively resolved as a matter of claim accrual under federal law. Thus, the fact that a *nolle prosequi* constitutes a favorable termination under Connecticut state law may be relevant to our accrual inquiry, but it is not dispositive. Unless a *nolle* also constitutes a "favorable termination" under federal common law,

then Spak's claim did not accrue for Section 1983 purposes upon entry of the *nolle*.

## II.     Effect of a *Nolle Prosequi*

Under Connecticut law, a prosecutor may decline to prosecute a case by entering a *nolle prosequi*. Conn. Practice Book § 39-31 (2017). The effect of a *nolle* is to terminate a particular prosecution against the defendant. However, a *nolle prosequi* is not the equivalent of a dismissal of a criminal prosecution with prejudice, because jeopardy does not attach. *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (per curiam) ("A nolle prosequi is 'a unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy.'") (quoting *Cislo v. City of Shelton*, 240 Conn. 590, 599 n.9 (1997)).

The statute of limitations on the *nolled* charge continues to run, and the prosecutor may choose to initiate a second prosecution at any time before the limitations period expires. *Winer*, 286 Conn. at 684-85. A prosecution can only be reinstituted following a *nolle*, however, by the filing of a new charging document and a new arrest. *Id*. at 685. If a new prosecution is not commenced, Connecticut law requires that within thirteen months of the *nolle* "all police and court records and records of the state's or prosecuting attorney" related to the prosecution be erased. Conn. Gen. Stat. § 54-

142a(c)(1); *see also Martin v. Hearst Corp.*, 777 F.3d 546, 549 (2d Cir. 2015).

### III.    The *Nolle Prosequi* Constituted a Favorable Termination for Claim Accrual Purposes

We agree with the district court that as a general matter a *nolle prosequi* constitutes a "favorable termination" for the purpose of determining when a Section 1983 claim accrues.[2]  The weight of authority on the common law of malicious prosecution supports this conclusion. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 659 cmt. (c) (AM. LAW INST. 1977) ("If the public prosecutor has power to make such an entry [of *nolle prosequi*] without the consent of the court, the entry constitutes a termination of the proceedings in favor of the accused."). Other federal courts have held that the entry of a *nolle prosequi* is sufficient to constitute a favorable termination. *See, e.g., Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 390 (4th Cir.

---

[2] Our opinion in *Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009), did not settle this issue. In *Roberts*, the district court granted judgment on the pleadings to the defendants on the plaintiff's Section 1983 malicious prosecution claim. *Id*. at 419-20. The district court held that the plaintiff had not demonstrated that the dismissal of criminal charges against him by *nolle prosequi* constituted a "favorable termination" as a matter of state substantive law, because the charges had been *nolled* as part of a plea agreement. *Id*. at 420. We remanded the case to the district court for further proceedings, on the basis that the facts in the complaint, construed in the light most favorable to the plaintiff, did not necessarily demonstrate that the *nolle* was entered in exchange for a plea to a lesser charge. *Id*. at 421-22. However, our opinion in *Roberts* only dealt with the merits of the plaintiff's underlying state law claim. It did not address the question of whether a *nolle* constitutes a favorable termination under federal common law.

2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015) (citing common law authorities to conclude that a *nolle prosequi* constitutes a favorable termination); *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002); *White v. Rockafellow*, 181 F.3d 106, 106 (6th Cir. 1999); *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997).

To be sure, courts and common law authorities state that a *nolle* does not constitute a favorable termination when it is entered for reasons that are "not indicative of the defendant's innocence." *Washington*, 127 F.3d at 557. However, this qualifier is defined narrowly. It generally only includes *nolles* that are caused by the defendant—either by his fleeing the jurisdiction to make himself unavailable for trial or delaying a trial by means of fraud. It also includes any *nolle* entered in exchange for consideration offered by the defendant (*e.g.*, cooperation). *See generally* RESTATEMENT (SECOND) OF TORTS § 660 (AM. LAW INST. 1977).

Spak disputes this conclusion, and cites our decision in *Murphy v. Lynn* which states that the termination of a prosecution must be "conclusive[]" in order to satisfy the favorable termination requirement of a Section 1983 claim. 53 F.3d at 548. *Murphy* involved a malicious prosecution claim originating in New York, while Spak's claim accrued in Connecticut, but it is nonetheless relevant because favorable termination for accrual purposes is a matter of federal law

which does not vary from state to state. Spak contends that a *nolle prosequi* is not a "conclusive" termination of a prosecution because jeopardy does not attach when a *nolle* is entered and the prosecuting attorney may file new charges against the same defendant for the same criminal act at any time before the statute of limitations on the underlying crime has run.

This argument misreads our holding in *Murphy*. It is true that, strictly speaking, a *nolle prosequi* only terminates a specific prosecution by vacating a charging instrument; it does not prevent a prosecutor from re-charging the same defendant for the same criminal conduct at some point in the future. *Winer*, 286 Conn. at 685. Under the common law, however, a termination of the existing prosecution is sufficient for a malicious prosecution claim to accrue. *See* W. PAGE KEETON, ET AL., PROSSER & KEETON ON TORTS § 119 (5th ed. 1984) (noting that the entry of a *nolle prosequi* constitutes favorable termination for malicious prosecution charges when it "h[as] the effect of ending the particular proceeding and requiring new process or other official action to commence a new prosecution"). So long as a particular prosecution has been "conclusively" terminated in favor of the accused, such that the underlying indictment or criminal information has been vacated and cannot be revived, then the plaintiff has a justiciable claim for malicious prosecution. At that point, all of the issues relevant to the

claim—such as malice and lack of probable cause, *see*, 299 Conn. at 210-11—are ripe for adjudication. Nothing in our opinion in *Murphy* can be read to contravene this longstanding common law rule.

We are mindful that both our court, *see DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996), and the Supreme Court have warned against the possibility of parallel civil and criminal litigation arising from the state's prosecution of the same defendant for the same criminal offense, *Heck*, 512 U.S. at 484–86 (noting that favorable termination requirement "avoids parallel litigation over the issues of probable cause and guilt . . . and [] precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction") (quoting 8 S. SPEISER, C. KRAUSE, & A. GANS, AMERICAN LAW OF TORTS § 28:5, p. 24 (1991)); *accord Poventud*, 750 F.3d at 130.

However, we read our precedent and the Supreme Court's dicta in *Heck v. Humphrey* to counsel only against duplicative litigation on issues of guilt and probable cause arising out of the same accusatory instrument.[3] *Heck* and its progeny generally deal

---

[3] We are aware that the District of Connecticut has held in several instances that a *nolle* is not sufficient to constitute favorable termination, and that a plaintiff must obtain either an unqualified dismissal or an acquittal of charges in order to pursue a malicious prosecution claim under Section 1983. *See Simpson v. Denardo*, No. 3:02CV1471(MRK),

with Section 1983 suits that are filed by plaintiffs asserting that a prior criminal conviction is invalid, and seeking to recover damages for the state's abuse of legal process. Those decisions thus require that the plaintiff demonstrate that the outstanding conviction has been conclusively invalidated in a manner that demonstrates his innocence before he can pursue his civil claim. *See, e.g.*, *Heck*, 512 U.S. at 484-81; *Pontevud*, 750 F.3d at 131-33; *DiBlasio*, 102 F.3d at 658-59. They do not address the type of termination at issue here, in which a plaintiff was never convicted of a criminal offense, but the charges against him were dismissed in a manner that did not preclude future prosecution under a different charging instrument.

We do not read those opinions to prevent such a plaintiff from bringing suit on the basis of vacated charges simply because he might be prosecuted again in the future, even successfully. *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 659, cmt. b (1977) (AM. LAW INST. 1977) ("In order that there may be a sufficient termination in favor of the accused it is not necessary that the proceedings should have

---

2004 WL 1737444, at *10 (D. Conn. July 29, 2004) ("A *nolle prosequi* does not qualify as a favorable termination for purposes of a malicious prosecution claim."); *Bacchiocchi v. Chapman,* No. 03:02CV1403, 2004 WL 202142, at *4-5 (D. Conn. Jan. 26, 2004). These holdings were based on the Second Circuit's decision in *Roesch v. Otarola,* 980 F.2d 850, 853 (2d Cir. 1992), which stated that "[a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." In *Roesch,* the prosecution against the plaintiff was not terminated by a *nolle prosequi,* but rather by participation in a pre-trial rehabilitation program. *Id*. at 851. To the extent that district courts have read *Roesch* to imply that a *nolle* does not constitute a favorable termination, this reading is mistaken.

gone so far as to preclude further prosecution on the ground of double jeopardy."). Indeed, while it is theoretically possible that a prosecutor could revive a *nolled* case, and obtain a criminal conviction against a defendant who has already received a favorable civil judgment in a malicious prosecution suit, we think that this is highly unlikely to occur in practice. *Cf. Uboh v. Reno*, 141 F.3d 1000, 1005–06 (11th Cir. 1998) (holding that a prosecutor's unilateral dismissal of charges constituted a favorable termination, on the grounds that it was "extraordinarily unlikely" that the prosecutor would "renew[] [the charges] in a subsequent action").

Moreover, preventing plaintiffs from bringing suit for malicious prosecution once a *nolle* is entered would be inconsistent with the purpose of Section 1983. *See Manuel*, 137 S. Ct. at 921 ("In applying, selecting among, or adjusting common-law approaches [for determining when a claim under Section 1983 accrues], courts must closely attend to the values and purposes of the constitutional right at issue."). When the state institutes criminal charges maliciously and without probable cause and requires a defendant to appear before a court and answer those charges, it violates the Fourth Amendment's guarantee against unlawful seizure. *See Murphy*, 118 F.3d at 944. The accused is entitled to seek recovery for such a wrongful seizure as soon as the charges are vacated. His day

in court should not be delayed merely because the state remains free to bring a similar prosecution in the future.

Lastly, Spak's contention that his claim accrued not upon entry of the *nolle*, but thirteen months later when records of the charges against him were automatically erased pursuant to Connecticut state law, *see* Conn. Gen. Stat. § 54-142a(c)(1), is meritless. Connecticut courts have made clear that the erasure provision Spak cites is a purely administrative measure, *Winer*, 286 Conn. at 679–80 (holding that "the recording of nolles and later, the erasure of criminal records," are "administrative rather than substantive in intent"). Moreover, the erasure of records pertaining to a prosecution does not preclude the prosecuting attorney from filing new charges against the same defendant at some point in the future. *See id*. at 683 (noting that the erasure provision does not "provide new substantive protections for defendants"). This statute therefore provides no more "conclusive" bar to future criminal proceedings than the *nolle* itself.

**CONCLUSION**

We have considered Spak's remaining arguments, and we find them unavailing. We therefore AFFIRM the judgment of the district court.